Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
Quentin A. Roberts (State Bar No. 306687)
Email: qroberts@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Andrea Clisura (to be admitted *pro hac vice*)
Email: aclisura@zlk.com
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

*Counsel for Plaintiffs Alain Liebermann
and Romeo James Alba*

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ALAIN LIEBERMANN and ROMEO JAMES ALBA, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>APPLE INC., a California Corporation,<br><br>                              Defendant. | Case No. 5:18-cv-00110<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

       Plaintiffs Alain Liebermann and Romeo James Alba (collectively, "Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against defendant Apple Inc. ("Apple" or "Defendant").

## NATURE OF THE ACTION

1.      This is a class action relating to Apple's unlawful and deceptive practice of intentionally slowing down or "throttling" the performance of certain iPhone models, including the iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, and 7 Plus models (the "Devices").

2.      Since introducing the first iPhone in 2007, Apple has inspired a degree of brand loyalty among its customers that few companies have matched.[1]   As a result, when iPhone users find the performance of their iPhones has begun to decline so that the phone must be replaced, they tend to upgrade to a newer iPhone model.

3.      Unfortunately for many of its customers, Apple has not shown them the same degree of loyalty.  Instead, Apple has deceptively slowed the performance of the Devices through software updates, causing many owners to take the unnecessary and expensive step of upgrading their phones prematurely.   Apple intentionally reduced the performance of the Devices while denying users material information that would have allowed consumers to restore Device performance while avoiding a costly upgrade.

4.      Specifically, unbeknownst to Device users, updated versions of Apple's iOS operating system were designed to deliberately slow the processor ("CPU") speed of the Devices as their lithium-ion battery ages.  This practice misleads users to believe that their Device is slow and operates poorly due to reduced processing performance and that the Device needs to be replaced, when, in reality, there may simply be a deficiency in battery power.  As a result, Plaintiffs and many other Device owners have prematurely upgraded their Devices rather than taking the far less expensive step of replacing the phone's lithium-ion battery.

5.      Notably, there is no evidence that any other smartphone manufacturers throttle their products through software updates.  In fact, several of Apple's competitors have already affirmatively stated they do not perform this type of throttling on their older models of smartphones.

---

[1] *See, e.g.*, *Apple has a huge advantage over its rivals ahead of the iPhone 8 release (AAPL)*, BusinessInsider.com,     http://markets.businessinsider.com/news/stocks/apple-stock-price-morgan-stanley-note-2017-5-1002022779-1002022779 (last visited January 5, 2018).

CLASS ACTION COMPLAINT

6.      This action seeks redress on a class-wide basis for Defendant's deceptive business practices in throttling the Devices.  Plaintiffs bring claims on behalf of themselves and on a class-wide basis against Defendant for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.*, fraudulent concealment, breach of implied contract, unjust enrichment, and injunctive relief.

## PARTIES

7.      Plaintiff Alain Liebermann is a citizen of the state of New York, residing in Brooklyn. In or about December 2017, Plaintiff Liebermann updated the iOS of his Device after consistently being prompted to do so.  After updating the Device's iOS, Plaintiff experienced a remarkable decline in the performance of his Device.  Plaintiff's Device operated so slowly he felt compelled to purchase a new smartphone.  Several days after updating his iOS, Plaintiff purchased a new iPhone at a cost of approximately $800.  Had Plaintiff known that Apple had intentionally slowed down the processing performance of his Device through the iOS, Plaintiff would not have purchased the Device, would not have replaced the Device, or would have paid less for the Device.

8.      Plaintiff Romeo James Alba is a citizen of the state of California, residing in Lake Balboa.  In or about October 2017, Plaintiff Alba updated the iOS of his Device after being constantly prompted to do so.  After updating the Device's iOS, Plaintiff experienced a considerable decline in the performance of his Device.  Plaintiff's Device now operates so slowly he plans on purchasing a new smartphone.  Plaintiff's Device also unexpectedly shuts down when there is still remaining battery life.  Had Plaintiff known that Apple had intentionally slowed down the processing performance of his Device through the iOS, Plaintiff would not have purchased the Device or would have paid less for the Device.

9.      Defendant Apple Inc. is a California corporation with its headquarters located at 1 Infinite Loop, Cupertino, California 95014.  Defendant designed, manufactures, markets, distributes, and sells the Devices.  It has sold the Devices directly to consumers and through third-party retailers nationwide.

**JURISDICTION AND VENUE**

10.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, including Apple's design and marketing of the Devices from its headquarters in Cupertino, California, and that Apple's wrongful actions harmed consumers who live in this District and purchased Devices in this District.

**INTRADISTRICT ASSIGNMENT**

12.     Pursuant to Civil L.R. 3-2(c), this civil action should be assigned to the San Jose Division, because a substantial part of the events or omissions giving rise to the claims occurred in the county of Santa Clara, where Apple is headquartered.

**APPLICATION OF CALIFORNIA LAW TO THE CLASS IS APPROPRIATE**

13.     Application of California law to the claims of the Class is appropriate because Defendant maintains its headquarters in Cupertino, California.

14.     On information and belief, Defendant also made corporate decisions from its California headquarters concerning how the iOS software updates would affect the performance of its Devices and what information to disclose to Plaintiffs and the Class regarding throttling and battery issues with its Devices—the subject matter of this litigation.

**FACTUAL ALLEGATIONS**

15.     Since introducing the iPhone in 2007, Apple has regularly released new iPhone models and has gained a loyal customer base.  For many iPhone users, the question has been not whether they will buy a new iPhone, but when.

16.     In recent years, Apple has released the iPhone 6 and 6 Plus (September 2014), 6s and 6s Plus (September 2015), SE (March 2016), 7 and 7 Plus (September 2016), 8 (September 2017), and X

(November 2017).  The latest iPhone X made headlines with its hefty retail price of approximately $1,000.

17.    Apple's iPhones feature a rechargeable lithium-ion battery and run Apple's iOS mobile operating system.  Over the past decade, along with its release of new generations of iPhones, Apple has released new versions of its iOS, claiming to offer new features, bug fixes, and other improvements.

18.    Many users, including Plaintiffs, have noted a marked slow-down and reduction in performance of their Devices after making an iOS update.

19.    Further, some users noticed that Device performance after an iOS update was linked to battery age.  In other words, a user whose Device performance was reduced after an iOS upgrade could restore performance by replacing the Device's lithium-ion battery.

20.    Although users reasonably expect that the ability of the iPhone's lithium-ion battery to hold a charge will diminish with time and use, such battery degradation does not normally impact overall Device performance.  Nevertheless, Apple had intentionally and surreptitiously linked CPU performance with battery age through its iOS updates.  Thus, once a user updates the iOS for their Device, CPU speed was increasingly throttled, causing a serious decrease in the performance of the Devices, even in some cases where the device is not very old.

21.    Last week, after a developer posted test results which compared the performance of different Devices running different versions of iOS and indicated certain Devices were indeed being slowed down through the iOS update,[2] Apple issued a statement, attempting to characterize the throttling as a "feature" developed for certain iPhone models:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices. Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.

> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.

---

[2] *See iPhone Performance and Battery Age*, GeekBench.com, https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/ (last visited January 5, 2018).

CLASS ACTION COMPLAINT

*Why Your iPhone Is Slowing Down*, Forbes.com, https://www.forbes.com/sites/gordonkelly/ 2017/12/21/apple-iphone-battery-life-slow-iphone-performance-ios11-battery/#75074a0e 674b (last visited January 5, 2018).

22.     In essence, Apple claims it started the practice approximately a year ago to compensate for battery degradation and, in particular, to avoid unexpected shut downs of Devices when the Device battery is unable to handle demand created by processor speeds.  Apple's explanation misses the mark.

23.     Contrary to its statement, Apple is not "prolonging the life" of the Devices through throttling; rather, it is shortening the life of its Devices by intentionally reducing its Devices' CPU speed, crippling Device performance, and causing users to replace their Devices prematurely.

24.     Nor is Apple's throttling practice compensating for diminished battery life.  Instead, throttling has served as a clumsy and deceptive means of concealing a distinct problem—namely, that Apple's batteries do not have the capacity to support the Devices over the length of their expected product life.

25.     Lithium-ion batteries degrade over time.  However, this problem has been more pronounced in the iPhone, which has used a relatively small lithium-ion battery.  Some iPhone users have experienced the effects of battery degradation through their iPhones abruptly shutting down even while they indicate the battery holds a charge.  This shutdown occurs due to the batteries' inability to handle the demand created by Device processor speeds.

26.     Apple has claimed that it throttles the CPU's maximum frequency to avoid such shutdowns.

27.     After being throttled, the Devices' performance speed is noticeably decreased causing applications to open and close slowly, and generally run poorly.  These effects are particularly frustrating to owners as the Devices often immediately operate worse after completing software updates—updates that are marketed as being an improvement to the Devices.

28.     Apple has stated that this practice began with iOS 10.2.1 and was employed most recently on the iPhone 7 with iOS 11.2.

CLASS ACTION COMPLAINT

29.     Shortly after Apple released iOS 10.2.1 in January 2017, it issued a statement noting that it had "made improvements" to reduce the shutdowns that a "small number" of iPhone users were experiencing with their phones.  Apple claimed that its fix had reduced the shutdown problem, which it characterized as an inconvenience, not a safety issue, by about 80%:

> With iOS 10.2.1, Apple made improvements to reduce occurrences of unexpected shutdowns that a small number of users were experiencing with their iPhone. iOS 10.2.1 already has over 50% of active iOS devices upgraded and the diagnostic data we've received from upgraders shows that for this small percentage of users experiencing the issue, we're seeing a more than 80% reduction in iPhone 6s and over 70% reduction on iPhone 6 of devices unexpectedly shutting down.

> We also added the ability for the phone to restart without needing to connect to power, if a user still encounters an unexpected shutdown. It is important to note that these unexpected shutdowns are not a safety issue, but we understand it can be an inconvenience and wanted to fix the issue as quickly as possible . . . .

*See Apple says iOS 10.2.1 has reduced unexpected iPhone 6s shutdown issues by 80%*, TechCrunch.com, https://techcrunch.com/2017/02/23/apple-says-ios-10-2-1-has-reduced-unexpected-iphone-6s-shutdown-issues-by-80/ (last visited January 5, 2018).

30.     Apple now claims that the shutdown issue it previously characterized as an inconvenience impacting a small percentage of users is the reason it has throttled the Devices of hundreds, if not thousands of users, many of whom were not experiencing abrupt shutdowns prior to updating their iOS.

31.     The iPhone's one-year warranty includes service coverage for a defective battery.  If the phone is out of warranty, Apple offers a battery service for $79, plus shipping and tax. Apple also offers AppleCare+ for iPhones to extend coverage to two years from the date of original purchase.

32.     If Device batteries were defective or degraded, Apple could and should have offered replacement batteries or alerted users that their batteries were due to be replaced.  Instead, Apple masked the fact that the iPhone's batteries are not equipped to maintain expected performance levels over the reasonable life of the Devices, and deceptively reduced the processor performance in the Devices without users' knowledge or consent, crippling the Devices and creating the false impression that the Devices themselves needed to be replaced.

33.     There is no evidence nor allegations that other smartphone manufacturers throttle their users' smartphones.   Several of Apple's competitors have recently affirmed that they do not

intentionally reduce their products' performance through software updates leading the public to reasonably believe that Apple alone does this.

34.     Device users, including Plaintiffs, experienced a loss in value of their Devices when updating their iOS and, as a result of the decreased performance of their Devices after such iOS update, prematurely purchased new replacement phones for hundreds of dollars.  Many users, including Plaintiff Liebermann, purchased such replacement phones from Apple.

35.     Apple omitted material information from its customers.  Specifically, it failed to inform customers that by upgrading their Devices to iOS 10.2.1 and/or later operating systems, Apple would intentionally and severely slow the performance of the Devices as the battery ages.

36.     Apple also failed to inform consumers that phone performance would be restored if affected individuals simply replaced the Device's battery at a cost of less than $100.  Without such battery replacement, there is no way for a Device user to avoid Apple's throttling once the Device battery is degraded, which occurs well before the reasonably expected end of the Device's product life. Indeed, even the iPhone 7 is being throttled after just one year of release.  Instead, Apple's practice of throttling the Devices misled consumers into replacing their Devices prematurely and at great expense.

## CLASS ALLEGATIONS

37.     Plaintiffs bring this action on behalf of themselves and the members of the proposed Class under Rule 23(a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure.  The proposed Class consists of the following:

> All persons in the United States who (1) own a Device which was throttled due to an iOS software update, or (2) who owned a Device and replaced it with a newer mobile phone due to the throttling resulting from an iOS software update.

38.     Plaintiffs reserve the right to redefine the Class prior to certification after having the opportunity to conduct discovery.

39.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

40.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The members of the Class are so numerous that joinder is impractical.  The Class consists of millions of members, the precise number which is within the knowledge of and can be ascertained only by resort to Defendant's records.

41.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are numerous questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

a) Whether Defendant intentionally throttled Devices through iOS software updates;

b) Whether Defendant should have disclosed it throttled Devices through iOS software updates;

c) Whether Defendant should have disclosed that during the useful life of the iPhones, the Devices could not withstand iOS software updates and would require battery replacements;

d) Whether Defendant's representations it made about the Devices' batteries were false or misleading;

e) Whether Defendant should have notified owners of Devices that the throttling could be avoided by replacing the battery;

f) Whether Defendant throttled Devices in order to profit off of Plaintiffs and the Class by inducing them to purchase new iPhones;

g) Whether Defendant was unjustly enriched as a result of its acts complained of herein;

h) Whether Defendant engaged in deceptive, unfair, and/or unlawful business practices under California law;

i) Whether Defendant violated the Computer Fraud and Abuse Act as a result of its acts complained of herein;

j) Whether Defendant breached the implied contract as a result of its acts complained of herein;

k) Whether Defendant engaged in fraudulent concealment as a result of its acts complained of herein;

l) Whether Class members are entitled to damages, and in what amount; and

m) Whether injunctive relief is appropriate, and what that relief should be.

42.     <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the members of the Class and, like all members of the Class, Plaintiffs owned Devices which were deceptively throttled due to an iOS software update.  Due to the slowed performance after the software

update, like other Class members, Plaintiff Liebermann was induced to purchase new mobile phones. Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the Class.

43. Adequacy. Fed. R. Civ. P. 23(a)(4). Plaintiffs are representatives who will fairly and adequately assert and protect the interests of the Class, and retained counsel experienced in prosecuting class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

44. Superiority of Class Action. Fed. R. Civ. P. 23(b)(3). A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

45. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

46. Injunctive and Declaratory Relief. Fed. R. Civ. P. 23(b)(2). The conduct of Defendant is generally applicable to the Class as a whole and Plaintiffs seek equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of Defendant make declaratory or equitable relief with respect to the Class as a whole appropriate.

47. Issue Certification. Fed. R. Civ. P. 23(c)(4). In the alternative, the common questions of law and fact, set forth in Paragraph 41, are appropriate for issue certification on behalf of the proposed Class.

## COUNT I

### *Unfair Business Practices*
(California Business & Professions Code §§ 17200, *et seq.*
Unfair Competition Law ("UCL"))

48.    Plaintiffs incorporate and reallege by reference each and every allegation above as if set forth herein in full.

49.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

50.    During the relevant time period, Plaintiffs and Class members purchased and were the rightful owners of the Devices. Nevertheless, Defendant intentionally slowed the Devices' processing speeds through seemingly innocuous software updates.  This throttling reduced the value and level of performance of the Devices and induced owners to prematurely purchase new mobile devices, often new iPhones.  Defendant's competitors do not surreptitiously throttle their various models of smartphones through software updates or otherwise.

51.    Defendant's practices constitute unfair business practices in violation of the UCL because, among other things, they are immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers and/or any utility of such practices is outweighed by the harm caused to customers.  Defendant's practices violate the legislative policies of the underlying statutes alleged herein; namely, protecting customers from unfair business practices and preventing persons from being injured by misleading advertising.  Defendant's practices caused substantial injury to Plaintiffs and members of the Class and are not outweighed by any benefits, and Plaintiffs and members of the Class could not have reasonably avoided their injuries.

52.    As a result of Defendant's unfair business practices, Plaintiffs have suffered injury in fact and a loss of money or property because they suffered from reduced processing speed on their Devices after completing a software update.  Moreover, Plaintiff Lieberman was induced into prematurely purchasing a new iPhone.  Plaintiff Lieberman paid for a new iPhone due to omissions and/or material misrepresentations made by Defendant as alleged herein, something he would not have

done had the true nature of the reason for and result of completing software updates on Devices been fully disclosed.

53.     Pursuant to Business and Professions Code § 17204, Plaintiffs and the Class are entitled to an order of this Court enjoining such conduct on the part of Defendant, specifically, (1) prohibiting Defendant from throttling Devices during the process of issuing software updates; (2) requiring Defendant to disclose any throttling that will occur as a result of future software updates; and (3) requiring Defendant to reinstate the previous processing speeds to those with Devices that have requested such remedy.  Additionally, Plaintiffs and the Class are entitled to restitution of monies paid for iPhones and battery replacements. Plaintiffs and the Class are also entitled to any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendant's ill-gotten gains, including the monies Defendant received or saved as a result of its wrongful acts and practices detailed herein.

## COUNT II

### *Fraudulent Business Practices*
(California Business & Professions Code §§ 17200, *et seq.*)

54.     Plaintiffs incorporate and reallege by reference each and every allegation above as if set forth herein in full.

55.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

56.     During the relevant time period, Defendant misrepresented and omitted material facts it was obligated to, or should have disclosed, regarding the fact that the software updates on Devices intentionally slowed the Devices' processing speed.  Additionally, during the relevant time period, Defendant misrepresented and omitted material facts it was obligated to or should have disclosed regarding the Devices' battery issues and/or reason for throttling the Devices after a software update was completed.  Plaintiffs relied on their understanding that Defendant would not intentionally reduce their Devices' performance through software updates.

57.     Such information with respect to the throttling of Devices, as well as the battery issues and/or battery replacement of Devices, was material to Plaintiffs in that as reasonable customers they

would have considered such information to be a substantial factor in deciding whether to update the software of the Device and/or purchase a Device.  Plaintiffs and the Class had a reasonable expectation that Defendant would not misrepresent and/or omit material facts concerning the reason for and result of completing software updates on Devices.

58.     Such acts and practices of Defendant, as described herein, constitute "fraudulent" business practices under California Business and Professions Code §§ 17200, *et seq.* in that such conduct was and is likely to deceive reasonable customers into believing software updates on their Devices, without any disclosure about throttling, would not intentionally degrade their Devices' performance.

59.     As a result of Defendant's fraudulent business practices, Plaintiffs have suffered injury-in-fact and a loss of money or property.

60.     Pursuant to California Business and Professions Code § 17204, Plaintiffs and the Class are entitled to an order of this Court enjoining such conduct on the part of Defendant, specifically, (1) prohibiting Defendant from throttling Devices during the process of issuing software updates; (2) requiring Defendant to disclose any throttling that will occur as a result of future software updates; and (3) requiring Defendant to reinstate the previous processing speeds to those with Devices that have requested such remedy.  Additionally, Plaintiffs and the Class are entitled to restitution of monies paid for iPhones and battery replacements. Plaintiffs and the Class are also entitled to any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendant's ill-gotten gains, including the monies Defendant received or saved as a result of its wrongful acts and practices detailed herein.

## **COUNT III**

### ***Unlawful Business Practices***
(California Business & Professions Code §§ 17200, *et seq.*)

61.     Plaintiffs incorporate and reallege by reference each and every allegation above as if set forth herein in full.

62.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

63.     Defendant's deceptive and misleading business practices and acts, as described herein, constitute unlawful business practices in violation of the UCL because, among other things, they violate the Computer Fraud and Abuse Act, 18 U.S.C §§ 1030, *et seq*.

64.     Plaintiffs reserve the right to identify other violations of law as the facts develop.

65.     As a result of Defendant's unlawful business practices, Plaintiffs have suffered injury in fact and a loss of money or property because they suffered from reduced processing speed on their Devices after completing a software update.   Moreover, Plaintiff Lieberman was induced into prematurely purchasing a new iPhone.  Plaintiff Lieberman paid for a new iPhone due to omissions and/or material misrepresentations made by Defendant as alleged herein, something he would not have done had the true nature of the reason for and result of completing software updates on Devices been fully disclosed.

66.     Pursuant to Business and Professions Code § 17204, Plaintiffs and the Class are entitled to an order of this Court enjoining such conduct on the part of Defendant, specifically, (1) prohibiting Defendant from throttling Devices during the process of issuing software updates; (2) requiring Defendant to disclose any throttling that will occur as a result of future software updates; and (3) requiring Defendant to reinstate the previous processing speeds to those with Devices that have requested such remedy.  Additionally, Plaintiffs and the Class are entitled to restitution of monies paid for iPhones and battery replacements. Plaintiffs and the Class are also entitled to any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendant's ill-gotten gains, including the monies Defendant received or saved as a result of its wrongful acts and practices detailed herein.

## **COUNT IV**

### ***Fraudulent Concealment***

67.     Plaintiffs incorporate and reallege by reference each and every allegation above as if set forth herein in full.

68.     Defendant's acts and omissions constitute fraudulent concealment.  As described herein, Defendant at the point of sale and at point of software update, concealed or suppressed material facts concerning how the iOS software update affects Devices, namely that the iOS update was designed to

slow processing speeds of the Devices once completed. Defendant also made misrepresentations of material fact to Plaintiffs and the Class regarding the battery issues and withheld the fact that the throttling of Devices could be avoided by simply replacing the battery. Moreover, Defendant knew that its omissions and representations were false and/or misleading when it made them.

69. Defendant had a duty to disclose the concealed facts to Plaintiffs and the Class because it had the exclusive knowledge regarding the true effect of the software update on Devices and that the throttling could be avoided by replacing the battery. Plaintiffs would have acted differently had they known the truth; they either would not have completed the software updates on their Devices and/or they would not have purchased iPhones.

70. Defendant made material misrepresentations and concealed material facts alleged herein intentionally with the goal that Plaintiffs and the Class would rely on the misrepresentations and omissions to their detriment and to the benefit of Defendant.

71. As a result of the concealment of material facts and misrepresentations, Plaintiffs and Class members sustained damages by incurring the cost of new iPhones or battery replacements due to the throttling on Devices and also due to poor performance and the artificially reduced value of their Devices because of the intentional throttling. Because Defendant engaged in this conduct with willful and malicious intent, Plaintiffs and the Class are entitled to damages, including punitive damages, in an amount to be determined at trial.

## COUNT V

### Computer Fraud and Abuse Act
(18 U.S.C. §§ 1030, *et seq*. ("CFAA"))

72. Plaintiffs incorporate and reallege by reference each and every allegation above as if set forth herein in full.

73. The CFAA regulates fraud and related activity in connection with computers, and makes it unlawful to intentionally access a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, thereby obtaining information from such a protected computer, within the meaning of Section 1030(a)(2)(C).

74.     The CFAA provides a civil cause of action to "any person who suffers damage or loss by reason of a violation of CFAA."  Section 1030(g).

75.     Plaintiffs' and the Class' Devices are a "protected computer . . . which is used in or affecting interstate or foreign commerce or communication" within the meaning of Section 1030(e)(2)(B).

76.     Defendant violated the CFAA by intentionally accessing Plaintiffs' and the Class' Devices by exceeding authorization, thereby obtaining information from a protected computer. Furthermore, the CFAA makes it unlawful to "knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer," of a loss to one or more persons during any one-year period aggregating at least $5,000 in value.  Section 1030(a)(5)(A); Section 1030(c)(4)(A)(i)(I).

77.     Defendant violated the CFAA by causing the transmission of a program, information, code, or command to Plaintiffs' and the Class' Devices by way of software update that was designed to intentionally impair the service of the Devices by artificially reducing their processing speed, without the authorization to do so from the owners.  Defendant's conduct caused actual impairment of the Devices' functionality which caused damage to the Devices in order to induce customers to purchase new iPhones.

78.     As alleged herein, Plaintiffs and the Class have suffered losses by reason of these violations, by the "reasonable cost . . . including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  Section 1030(e)(11).  The aggregate loss exceeds $5,000 considering, on information and belief, at least thousands of Class members have been induced into purchasing new iPhones, which individually retail for approximately $1,000 each.

79.     Defendant's unlawful access to Plaintiffs' and the Class' protected computers has caused Plaintiffs and Class members irreparable injury.  Unless restrained and enjoined, Defendant will continue to commit such acts.  Plaintiffs and the Class are entitled to obtain compensatory damages and injunctive or other equitable relief pursuant to Section 1030(g).

**COUNT VI**

***Breach of Implied Contract***

80.    Plaintiffs incorporate and reallege by reference each and every allegation above as if set forth herein in full.

81.    Defendant offered to sell Devices to Plaintiffs and the Class, marketing them as cutting-edge mobile devices that contained the top of the line innovations and provided great performance. This is reflected in the price premium for the Devices.

82.    Plaintiffs and the Class paid substantial amounts of money to Defendant to purchase the Devices.  This exchange constituted the entering into implied contracts with Defendant whereby Defendant implicitly agreed to not intentionally damage or interfere the performance of the Devices or prematurely and artificially decrease the value of the Devices.

83.    Indeed, a material term of this implied contract is a covenant by Defendant that it will not purposefully interfere with Plaintiffs' and the Class' use of their Devices or purposefully decrease the value of their Devices.  However, Defendant did intentionally interfere with Plaintiffs' and the Class' ability to use their Devices by deceptively throttling the Devices through software updates, as alleged herein.  Moreover, in doing so, Defendant also purposefully decreased the value of Plaintiffs' and the Class' Devices by materially reducing their level of performance.

84.    Each purchase of a Device from Defendant contains this mutually agreed upon implied contract.  Moreover, Plaintiffs and the Class relied upon this implied contract and would not have purchased their Devices had they known Defendant would intentionally interfere with their ability to use the Devices as intended and/or would artificially decrease the value of the Devices by clandestinely throttling the performance.

85.    Plaintiffs and the Class fulfilled their obligations under the contract by paying Defendant for their Devices.  Defendant, however, failed to refrain from intentionally interfering with Plaintiffs' and the Class' ability to use their Devices as intended, and failed to refrain from artificially decreasing the value of their Devices.  Defendant's breach of its obligations under the implied contract between the parties directly caused Plaintiffs and the Class to suffer injuries, as detailed herein.

86.    As a result, Plaintiffs and the Class are entitled to all relevant damages for Defendant's breach of the implied contract.

## COUNT VII

### *Unjust Enrichment*

87.    Plaintiffs incorporate and reallege by reference each and every allegation above as if fully set forth herein.

88.    Plaintiffs and Class members conferred benefits on Defendant by purchasing Devices from Defendant.

89.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Devices, new iPhones and battery replacements because Defendant made material misrepresentations and/or omissions concerning the reason for and result of completing software updates on the Devices.  Moreover, Defendant has been unjustly enriched in retaining the revenues derived from failing to disclose that throttling issues on Devices could be avoided by simply replacing the battery rather than purchasing a new iPhone.

90.    Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented and omitted material facts it was obligated to, or should have disclosed, regarding the fact that the software updates on Devices intentionally slowed the Devices' processing speed and that replacing the battery rather than purchasing a new iPhone could avoid the throttling issues.  These misrepresentations caused injuries to Plaintiffs and Class members because they would not have completed software updates on their Devices and/or purchased iPhones if the true facts had been disclosed.

91.    Because Defendant's retention of the benefits conferred on them by Plaintiffs and the Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand judgment against Defendant as follows:

A.    An order certifying that this Action may be maintained as a class action, that Plaintiffs be appointed as the Class Representatives, and their counsel be appointed Class Counsel;

B.      A judgment awarding Plaintiffs and all members of the Class damages as alleged above incurred by Plaintiffs and Class members as a result of Defendant's unlawful, deceptive, and unfair business and trade practices described herein;

C.      A judgment awarding Plaintiffs and all members of the Class restitution or other equitable relief, including, without limitation, disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class as a result of their unlawful, unfair, and deceptive business practices described herein;

D.      An order enjoining Defendant from continuing to violate the laws as described herein;

E.      A judgment awarding Plaintiffs the costs of suit, including reasonable attorneys' fees, and pre and post-judgment interest; and

F.      Such other and further relief as may be deemed necessary or appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: January 5, 2018

**LEVI & KORSINSKY, LLP**

By: */s/Rosemary M. Rivas*
Rosemary M. Rivas

Rosemary M. Rivas
Quentin A. Roberts
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

**LEVI & KORSINSKY, LLP**
Andrea Clisura (to be admitted *pro hac vice*)
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

*Counsel for Plaintiffs Alain Liebermann and Romeo James Alba*